## THE STATE v. ED LAWHORN, Appellant.

**Division Two, May 20, 1913.**

1. **INFORMATION: No Verification: Verified Complaint Not Sufficient.** Where the information is not verified by the oath of the prosecuting attorney, nor by the oath of some person competent to testify indorsed on or appended to it, nor supported by the affidavit of some person competent to testify in the case contained in a separate paper and filed with it, the information should be quashed. The fact that the complaint filed by the prosecuting attorney with the justice of the peace was verified by the oath of the prosecutrix, and that after a preliminary hearing defendant was held to await the action of the grand jury or the filing of an information against him, and that after a transcript, together with the verified complaint, was filed by the justice with the clerk of the circuit court, an information filed by the prosecuting attorney, in which it is stated the information is based upon the affidavit of said prosecutrix "herein filed," there being no affidavit except the verified complaint, is not sufficient. A verified complaint and a verified information fulfill different offices. A verification of the complaint is not a verification of the information.

2. **RAPE: Statement by Prosecutrix as to Fact of Rape Competent: Details Incompetent: Exceptions to Rule.** The fact that prosecutrix made prompt complaint is always admissible in prosecutions for rape as an element of corroboration. The promptness of such complaint, in order to fulfill the legal requirements, depends upon the age of prosecutrix and upon the facts of the case. But the details of the crime as related by prosecutrix to witnesses in the case are hearsay and not admissible, unless the defendant himself testifies to the fact of intercourse, or unless elicited by defendant, or unless offered by the State after testimony has been offered tending to impeach prosecutrix.

3. ———: **No Sufficient Evidence.** Passive consent to sexual intercourse removes the offense from the category of forcible ravishment; and while there is in this case evidence from which the jury might have found the defendant had sexual intercourse with prosecutrix, and, owing to her age, the facts may show him guilty of some statutory offense of which he is not charged, when all the circumstances are considered they do not convince the mind that he was guilty of rape.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED.

*Orchard & Cunningham* for appellant.

(1)    The court erred in overruling the motion to quash the information, as said information was not verified by the prosecuting attorney nor by the prosecuting witness, nor by any one who would be a competent witness in said cause, neither was there an affidavit lodged with said information. R. S. 1909, sec. 5057; State v. Brown, 181 Mo. 224; State v. Bonner, 178 Mo. 430. The prosecuting attorney presumably intended to base his information on the affidavit of Dorothy Benson which was filed before H. C. Meade, a justice of the peace, for the apprehension and preliminary examination of the defendant. Our contention is that is not the affidavit the statute contemplates. That affidavit is made and filed in a different forum and for a different purpose, therefore, could not be substituted to aid the information filed by the prosecuting attorney. (2)    The court erred in permitting the father of Dorothy Benson to detail to the jury what the prosecutrix said to him, over the objection of the defendant. The prosecuting witness was in court and testified, therefore, no third person had a right under the law to testify as to what she had said to them. State v. Patrick, 107 Mo. 147; State v. Grote, 109 Mo. 345; State v. Minton, 116 Mo. 605; State v. Nocton, 121 Mo. 537; State v. Punshon, 124 Mo. 448; State v. Rapp, 142 Mo. 443; State v. Pruett, 144 Mo. 92; State v. Huff, 161 Mo. 459. (3)    The testimony is insufficient to support the verdict for the reason that the prosecutrix does not show that she made the utmost resistance possible to repel the assault and to prevent the defendant from having intercourse with her, and if there was any resistance whatever it was merely a passive course of conduct. A slight resistance is not sufficient; there must be no consent, however reluctant. State v. Burg-

dorf, 53 Mo. 65; State v. Perkins, 11 Mo. App. 82; State v. Wilson, 91 Mo. 413; State v. Patrick, 107 Mo. 147; State v. Jaeger, 63 Mo. 173; State v. Priestly, 74 Mo. 24; State v. Donnington, 246 Mo. 343.

*John T. Barker*, Attorney-General, and *Ernest A. Green*, Assistant Attorney-General, for the State.

(1) It is contended that the court erred in over-ruling defendant's motion to quash because the prose-cuting attorney based his information on the affidavit of the prosecuting witness, Dorothy Benson, filed before H. C. Meade, the justice of the peace who conducted the preliminary examination in this case. There is absolutely no merit in this contention of appellant. Sec. 5057, R. S. 1909. Under this section of the statutes it has been held that an affidavit deposited with the circuit clerk is deemed filed with the information. State v. Coleman, 186 Mo. 166. State v. Brown, 181 Mo. 224. (2) The testimony of the father of the prosecutrix as to what his daughter did and as to what she told him with reference to this assault was properly admitted by the trial court as evidence of a complaint or outcry. State v. Patrick, 107 Mo. 163; State v. Warner, 74 Mo. 83; State v. Hatfield, 72 Mo. 518. (3) It is contended by appellant that the testimony is insufficient to support the verdict. We think not. The appellate court cannot say that the evidence of the prosecutrix should be altogether ignored, and monstrous as the accusation against defendant may be it is a question of fact for the trial court and the jury. State v. Wilcox, 111 Mo. 569; State v. Dusenberry, 112 Mo. 277; State v. Marcks, 140 Mo. 656; State v. Harris, 150 Mo. 56. When the court considers that this prosecutrix was a child of only fourteen years of age we feel that her testimony shows the utmost resistance on her part. Under such circumstances this court will not convert itself into a trier of facts and undertake to

find a different result from that of the jury. State v. Matthews, 202 Mo. 147; State v. McCullough, 171 Mo. 574; State v. Tetrick, 199 Mo. 100; State v. Williams, 199 Mo. 137.

FARIS, J.—Defendant was tried in the circuit court of Shannon county on the 9th day of January, 1912, upon the charge of rape. The triers of fact found him guilty thereof and assessed his punishment at imprisonment in the penitentiary for a term of five years. From the sentence and judgment of the court imposed in pursuance of the jury's verdict, he has, after the usual motions for a new trial and in arrest of judgment, appealed to this court.

The information upon which this prosecution is based is, caption omitted, as follows:

"G. S. Sizemore, prosecuting attorney within and for the county of Shannon and State of Missouri, under his oath of office and upon the information of the affidavit of Dorothy Benson herein filed, informs the court that Ed Lawhorn on or about the 27th day of August, 1910, at the said county of Shannon, State of Missouri, then and there in and upon one Dorothy Benson, unlawfully, violently and feloniously did make an assault, and her the said Dorothy Benson, then and there, unlawfully, forcibly and against her will, feloniously did rape, ravish and carnally know; against the peace and dignity of the State."

This information was not verified by the prosecuting attorney, though, as appears from the allegations therein, it was based upon a complaint, duly verified, by the prosecutrix and filed with one H. C. Meade, a justice of the peace of Shannon county. It appears that upon the filing of this complaint with the said justice of the peace a warrant was duly issued, and after the proper procedure pursuant to statute, a preliminary trial was accorded defendant and he was held on bail to await the action of the grand jury, or the filing against

him of an information. The transcript of the justice, together with the verified complaint, was filed in the office of the clerk of the circuit court by the justice of the peace prior to the filing of the information herein. No supporting affidavit, and in fact no affidavit other than the one filed with the justice of the peace in verification of the complaint aforesaid, was ever filed in the circuit court, nor was the information verified either by the prosecuting attorney or by anyone else. A motion to quash the information was filed by the defendant and by the court overruled, prior to his trial. In this motion to quash the lack of statutory verification of the information was strenuously urged, and has been properly preserved for review, and is here urged by the defendant.

The facts shown upon the trial on the part of the State are substantially as follows:

On August 27, 1910, some sort of a picnic occurred at West Eminence, in Shannon county. Present at this picnic were Dorothy Benson, the prosecutrix; Ed Lawhorn, the defendant; Jesse Benson, the father of prosecutrix; Joe Mahan, her uncle; Mrs. Deacon, an acquaintance of prosecutrix; Cynthia McDowell, also an acquaintance of prosecutrix; and others, but how many others, or how numerous were the others, does not appear from the record. Defendant Lawhorn was at work in some sort of a stand, then being operated upon the picnic grounds by one Daniel Emmons. Sometime during the day prosecutrix went to the stand where defendant was at work and had some conversation with him in the presence of her friend, Cynthia McDowell. Prosecutrix says that defendant inquired of her how long she had been there, and whether or not she would be back again that night, and that he "set up the lemonade." Defendant's statement of this conversation differs from that of prosecutrix, but neither of them is corroborated, as one of them might well have

been, by Cynthia McDowell, the latter not being called
as a witness. Shortly after this conversation prosecu-
trix left the picnic ground for the purpose of going a
little distance away into the brush, ostensibly, to at-
tend to a call of nature. Leaving the picnic ground she
passed along an old road, near which and about fifty
yards distant from the picnic ground, she passed her
uncle, Joe Mahan, who was about his wagon, in which
he seems to have had a sick child. While she was talk-
ing to her uncle, defendant came along the same way,
passed her and continued in the direction in which she
was going, walking ahead of her. After leaving her
uncle, and after going some twenty or thirty steps, she
says that she was seized by the defendant, who said
to her, "I have got you now," and pulled and dragged
her on up the road a distance of some 270 yards, to
a field which he entered (still pulling her along with
him) by opening a large gate, and after going a short
distance into the field where there seems to have been
weeds and brush grown up, he threw her down and had
sexual intercourse with her at least twice—perhaps
five times—though the number of these acts does not
clearly appear from her testimony. The acts of alleged
rape occurred some 350 or 400 yards from the picnic
ground between one and two o'clock in the afternoon.
While being pulled or dragged from the point men-
tioned, by defendant, she made no outcry and resisted
only, as she says, by pulling back. In the act of copula-
tion it became necessary to remove her drawers, which
she says was done, and that after the acts were accom-
plished she put her drawers on and returned to the
picnic grounds. Her testimony is to the effect that she
resisted to her full strength and wept during the per-
formance of the acts complained of; but the question
of her resistance and the fact of her weeping are not
corroborated, and rest upon her testimony alone. Up-
on her return to the picnic grounds, after the alleged
rape, she went to her acquaintance, Mrs. Deacon, and

told the latter that defendant had thrown her down. At this time, as Mrs. Deacon testifies, there was dirt upon her clothing and a blood spot upon her left shoulder. She was not weeping then, nor does Mrs. Deacon say she appeared to have been weeping shortly previous, though this witness says her face was flushed. In her conversation with Mrs. Deacon she denied, or at least did not specifically state, that sexual intercourse had been consummated upon her person, but simply said that defendant "didn't do anything, but he tried to." Being advised by Mrs. Deacon to tell her father what had occurred, prosecutrix sought him out and did so. When she told her father about it she seems to have been crying. At the time of her conversation with Mrs. Deacon and also at the time of her talk with her father, her clothing was noticeably soiled and disarranged. At the time of the alleged rape prosecutrix says she was unwell. At the time of the occurrence of the act charged, prosecutrix was almost fifteen years of age, or fourteen years and ten months old, lacking three days.

After prosecutrix's father was advised by her of the alleged acts of defendant, he went to defendant and asked him about what had occurred. Defendant denied knowing anything about it, or of having anything to do with prosecutrix.

During the examination of prosecutrix's father upon the trial he was asked this question: "Make a statement to the jury as to what she was doing and what she said to you at that time?" (That is, at the time following prosecutrix's conversation with Mrs. Deacon and when she was telling her father of the alleged acts of the defendant). Objected to by the defendant as hearsay; which objection was by the court overruled, to which ruling of the court the defendant excepted at the time. Thereupon the father of prosecutrix proceeded to detail not only what the latter had said to him, but what Mrs. Deacon had said to him in a con-

versation at which defendant was not present, or within hearing. This is urged as error.

There is some testimony in the record as to the condition of the clothing of defendant and to the effect that the shirt which it is said he wore upon the day in question, but ownership of which is not as definitely shown as it might be, had a spot of blood on that part of it, called by the witnesses "the lower front part of the tail."

Defendant testifying for himself admits passing along the road following the prosecutrix; admits passing her while she was talking to her uncle Joe Mahan; admits having a conversation with her in the neighborhood of where she says the rape occurred, but denies any sexual intercourse with her or any attempt to have sexual intercourse with her on this occasion. He says that he followed her to the place in question at her own request and suggestion and because she had told him that she had something to tell him, but that she could not tell him at the stand where he was at work, and that he then proposed that they walk up the road together, and that while prosecutrix insisted that that would not do, that someone would tell it, he then asked her to go on and that he would come after her. That she thereupon started, defendant going one way and prosecutrix the other, but that he met her by another stand returning, and that she thereupon said that her uncle was up there. That defendant said to her that he would "set them up," which he did, and go on back to work, but that prosecutrix still insisted that she had something she desired to tell him; that he, defendant, then told her to go on, that he didn't care for her uncle, and that on the way up to the alleged scene of the trouble he passed her uncle and caught up a short distance beyond with prosecutrix, who asked him to go on up further with her as she didn't want anyone to see her talking to him, and that not having time to do so, but being

compelled to return to his work, he left her and returned to the stand where he was employed.

On the day following the alleged act prosecutrix went with her father and others to the alleged scene of the rape where the weeds were observed to be trampled down, and which looked, as the witnesses say, ''like it might have been used,'' and where the hat pin of prosecutrix was found.

On the day in question prosecutrix had reached the picnic grounds sometime before her father and mother got there, and it seems she did not know at the time of her conversation with Mrs. Deacon that her parents had reached the ground, and so stated to Mrs. Deacon, who advised her that during her absence up the road her parents had reached the grounds.

The above statement of facts will be sufficient, in the view we take of this case, to comply with the statutory requirements provided in this behalf.

I.   Defendant urges that the court erred in overruling his motion to quash the information, because

**Information: Verification.** of lack of verification either by the oath of the prosecuting attorney or by the oath of some person competent to testify as a witness in the case.

The statute as to the verification of informations which was in force at the time of the filing of the one complained of herein, is as follows:

''Sec. 5057.  Informations may be filed by the prosecuting attorney as informant during term time, or with the clerk in vacation, of the court having jurisdiction of the offense specified therein.   All informations shall be signed by the prosecuting attorney and be verified by his oath or by the oath of some person competent to testify as a witness in the case, or be supported by the affidavit of such person, which shall be filed with the information; the verification by the prosecuting attorney may be upon information and belief.   The names

of the witnesses for the prosecution must be indorsed on the information, in like manner and subject to the same restrictions as required in case of indictments.''

It is evident from the facts as we have set them forth that neither of the three ways provided by the section above quoted, by which an information may be verified, was used. But it is strenuously insisted by the State that the information herein was properly and sufficiently supported by affidavit, for the reason that there had been theretofore filed with the justice of the peace a complaint, duly verified, by the prosecutrix; that this complaint, as a paper in the case, had been by the justice of the peace lodged with the clerk of the circuit court as a part of the files accompanying the justice's transcript of his proceedings on the preliminary hearing. The State insists that this fact is a sufficient compliance with the requirements of section 5057, supra, and that it was not necessary that the information be verified by the oath of the prosecuting attorney, or by the oath of some person competent to testify as a witness in the case, or that it be supported by the affidavit of such person filed with the information.

It is not necessary here to go at length into the legal history of the constitutional amendment and of the statutes in aid thereof, by which prosecutions for felonies were permitted to be instituted by informations in lieu of or coordinately with indictments. Suffice it to say that the Constitution was changed in this behalf in November, 1900, and that amendments to our statutes of criminal procedure in consonance with the change in the organic law, were passed in 1901, at which time section 2478, Revised Statutes 1899, was amended to read as follows:.

"Sec. 5058. When any person has knowledge of the commission of a crime, he may make his affidavit before any person authorized to administer oaths, setting forth the offense and the person or persons charged therewith, and file the same with the clerk of

the court having jurisdiction of the offense, for the use of the prosecuting attorney, or deposit it with the prosecuting attorney furnishing also the names of the witnesses for the prosecution; and it shall be the duty of the prosecuting attorney to file an information, as soon as practicable, upon said affidavit, as directed in the next preceding section.''

Long prior to the constitutional amendment and the amending of the above section there were in existence statutes providing for the making of complaints in writing before any magistrate, setting forth the fact that a felony had been committed, averring the name of the one charged with the commission thereof, and making it the duty of the magistrate to issue his warrant for the apprehension of the alleged doer of the felony, and providing for the examination of witnesses; and if upon such examination it appears that a felony had been committed, and that there was probable cause to believe the prisoner guilty, the magistrate was required to bind the prisoner over in suitable bond, if the offense be bailable, and if not bailable to commit the prisoner to jail until an indictment could be preferred by a grand jury. In other words, these provisions constituted the legal machinery by which arrests, preliminary examinations, commitments or discharges of persons charged with felonies were handled and disposed of. The complaint in writing was required to be verified.

In the instant case this is precisely what was done. A verified complaint was filed by the prosecutrix with Meade, the justice of the peace; a preliminary hearing was had and the justice deeming that a felony had been committed, and that there was probable cause to believe the defendant guilty thereof, the defendant was bound over to await the action of a grand jury, or the filing of an information. Nothing was done in the case, nor were any papers filed, or affidavits filed, which were not required in a preliminary examination for many years

before the passage of the Act of 1901. [Laws 1901, p. 139.] For reasons known to the lawmakers, and touching which it is neither our privilege nor our duty to inquire, the Legislature saw fit to amend the statutes so as to read as they now do in sections 5057 and 5058, supra.

As stated, three methods of verification were provided for by section. 5057, supra: (1) The information might be verified by the oath of the prosecuting attorney; (2) such information might be verified by the oath of some person competent to testify as a witness in the case by appending to, or indorsing on, the information such oath; or (3) it might be supported by the affidavit of some person competent to testify in the case, which affidavit might be contained on some separate and extraneous paper, but which must be filed with the information. By a reference to section 5058, supra, it will be seen that the affidavit required by subdivision three noted above, could be made before any person authorized to administer oaths, and the same could be filed with the clerk of the court having jurisdiction of the offense, or it might be deposited with the prosecuting attorney to be filed by him, with the information, when he should thereafter file such information. We are not holding that when such affidavit was filed by the competent witness provided for in section 5057, supra, it was necessary to file the same with the clerk at the moment of filing the information. But all that is required is that such supporting affidavit when filed with the clerk of the court having jurisdiction of the offense may be filed with such clerk at any time prior to the filing of the information, and that so far as this affidavit is concerned, if the same be filed at or before the filing of the information by the prosecuting attorney, this is a sufficient compliance with the law. [State v. Coleman, 186 Mo. l. c. 166.] But none of the several methods above pointed out as being sufficient was adopted or used in the case at bar. Here there was

no verification of the information, either by the prosecuting attorney, or by any witness competent to testify in the case by appending to, or indorsing on, the paper containing the information either of such required affidavits; nor was there filed with the clerk of the court having jurisdiction of the offense, at any time at or before the filing of the information, any affidavit contained on a separate paper and made by any witness competent to testify in the case. All that was filed (or re-filed, if we may use the expression), in this case, was the verified complaint which had theretofore been made and filed with the justice of the peace who held the preliminary examination, and which complaint was made, filed and verified for a purpose wholly different from that meant by sections 5057 and 5058, supra. It may be technical, but it is true, that these affidavits perform wholly different offices. One of them was in use and required many years before the other was brought into existence by the statutory enactment. The verified complaint when it was filed with the justice of the peace and a warrant was issued and a preliminary held, had then served its statutory purpose, and became *functus officio.*

In order to agree in this case with the contentions of the State we are required to hold that the verified complaint filed by the prosecuting witness with the justice of the peace could serve both as a verification for the complaint and as a verification for the information. Since the charge in this case involved as a maximum punishment the assessment by the jury, if they saw fit, of the punishment at death, it was necessary under the statute to allow a preliminary hearing to defendant. It was entirely within the discretion of the prosecuting attorney to proceed for a lower cognate offense, or if he were so advised upon an examination of the testimony, not to proceed at all. Suppose that upon an examination of the testimony the prosecuting attorney had seen

250 Mo.—20

fit to file an information against defendant here for an assault with intent to rape; or for criminal knowledge of a woman between fourteen and eighteen years— either of which he might have done, if he had been so advised? Could it be said then that the verified complaint would have been a sufficient basis upon which to bottom the information, or that it would have been a sufficient compliance with the reasonably plain provisions of sections 5057 or 5058, supra? We think not, and so hold with reluctance, being impelled to this view by the plain statutory requirements which the Legislature has seen fit to enact governing the procedure in such cases. We might say in passing that it would have been a very easy thing to have amended the information in this case pending the motion to quash the same, and thus have avoided the condition which exists here.

II. The conclusions which we have reached above must result in a reversal of this case, but as the same may be retried upon this or some other cognate charge, it may be well to say that in our view the admission, over objections of defendant, of the testimony of Jesse Benson, as to the details of the alleged rape committed upon prosecutrix by defendant, constitutes error. That this is so, we take it is now and has long been the well-settled law in this State. [State v. Bateman, 198 Mo. l. c. 221; State v. Jones, 61 Mo. 232; 3 Russell on Crimes, 232; 23 Am. & Eng. Ency. Law (2 Ed.), 874.] There are, we concede, some exceptions to this general rule, as for example, where a defendant testifies to the fact of criminal connection with the prosecuting witness, and sometimes where the court withdrew the hurtful testimony from the consideration of the jury; but none of the exceptions known to us is present in the case at bar. Upon a retrial of this case, if such retrial shall be had, the prosecuting attorney should not be permitted to elicit from any witness the details of the alleged rape as related by her to such other witness, un-

less upon the exceptions hereafter set out. The fact of making prompt complaint as an element of corroboration is admissible always. The promptness of such complaint to fulfill the legal requirements will depend of course upon the age of the prosecutrix, and upon the facts and circumstances of the case. The rule, as well as some of the exceptions thereto, is well-stated in State v. Bateman, supra, where it is said: "The authorities are uniform in holding that in prosecutions for rape, the particular facts of the crime as related by the prosecutrix at the time of or after making complaint of the injury are not admissible in evidence, except when drawn out from the complainant by cross-examination, or introduced as confirmatory of her testimony, *after testimony has been introduced tending to impeach her.*" Nothing of this sort occurred in the trial of this case, and this error should be avoided upon a retrial herein, if one shall be had.

III. It is strenuously contended by defendant that the testimony in this case as shown by the record, is not sufficient to make out the crime charged. Upon the cold record, and at this distance from the *locus in quo*, this contention seems to us to have much weight. The triers of fact might well have found that the statements of the prosecuting witness as to the consummation by defendant of sexual intercourse with her was proven, defendant's strenuous denial thereof notwithstanding. But the serious question is: Was this intercourse rape? Considering the circumstances as they exist; the nearness of many persons to the scene of the alleged rape; the proximity of prosecutrix's uncle to the place at which prosecutrix says she was seized by the defendant; the fact that after such seizure she was pulled and forced unwillingly to go a distance of some 270 yards to the scene of the alleged rape; that the place was in a measure a public one; that the time was in broad day-

*Rape: Sufficiency of Evidence.*

light; and that neither while being dragged, or pulled, or forced unwillingly to go, from a point, at most, but thirty yards from her uncle, nor while traversing such distance of 270 yards she either screamed or made outcry, though legions were near—all these things tend very strongly to convince the mind that there was at least such passive consent as to take this case from out of the category of rape. There may be some other offense of which, under the facts, defendant was guilty, but we are not convinced that upon the record here, and upon the testimony adduced, he ought to have been convicted on this charge.

It follows from what has been said that this case should be reversed and remanded for a new trial, if the State is so advised; and it is so ordered.

*Brown, P. J.*, and *Walker, J.*, concur.