THE STATE v. OTHO WILLIAMS, Appellant.—22 S. W. (2d) 649.

Division Two, December 11, 1929.

*Stratton Shartel*, Attorney-General, and *Smith B. Atwood*, Assistant Attorney-General, for respondent.

BLAIR, P. J.—Defendant was convicted in the Circuit Court of Shannon County of assault with intent to rape, and was sentenced on the verdict of the jury to confinement in the state penitentiary for two years and was granted an appeal.

The occurrences leading up to appellant's arrest and conviction found a setting in and near the home of Homer Williams in Shannon County. Appellant is a cousin of Homer Williams, and all of the witnesses were related more or less closely to Homer Williams or his wife, the victim of appellant's alleged assault.

It is unnecessary to enter into a recital in detail of the testimony offered by the State, and we need to refer to appellant's evidence no further than to state that it constituted a denial of the State's testimony in so far as any assault is concerned. The case is here without a brief on the part of appellant.

In determining the sufficiency of the evidence to support the verdict of guilty, the testimony offered by the State must be accepted by us as true and the State must be given the benefit of every inference which may reasonably be drawn therefrom. Mindful of this rule, we will proceed to state only the ultimate facts which any substantial testimony of the State tends to establish.

Homer Williams and Irene Williams, his wife, lived in a two-roomed frame house. Walter Thomas was a brother of Irene Williams. He and his wife Bessie lived with Homer Williams and his wife. During the night preceding and on the morning of June 18, 1926, appellant and one Everett Williams had been fox-hunting in company with a neighbor living at some distance from the Williams home. Appellant seems to have imbibed rather freely during the fox hunt and was considerably under the influence of liquor. He reached the home of one Shade Thomas, near the Homer Williams home, quite early in the morning. He was accompanied by Everett Williams, but the neighbor who had been on the fox hunt with appellant did not go to the Thomas home. On arriving there they aroused the Shade Thomas family. Shade Thomas was a brother of Irene Williams, as was Gint Thomas, who seems to have spent the night with his brother.

After arousing the Shade Thomas family and accompanied by Shade and Gint Thomas, the appellant and Everett Williams pro-

ceeded to pay a visit to the house of Homer and Irene Williams. The two women were getting breakfast in the kitchen, and Homer Williams and Walter Thomas, their husbands, were sitting in the other room waiting for the meal to be prepared. When appellant and his friends reached the Homer Williams home, appellant appeared at the open door of the kitchen where Irene and Bessie were getting breakfast. The door leading into the sitting room was open. Speaking of and concerning the two women who were getting breakfast, appellant said: "These are awful pretty women in here: They have got awful pretty hips," and then attempted to put his hands on Irene Williams as if to "hug" her. Irene repulsed appellant's advances. Some of the witnesses say she threatened to throw hot grease on appellant, and others that she threatened him with a stick of wood. Appellant then turned his attentions to Bessie Thomas and she picked up a stick of fire wood to protect herself. All this occurred within the sight and hearing of the husbands of the two women. The three men who accompanied appellant were in the yard at the time and in close proximity to the open kitchen door.

Appellant then left the Homer Williams house and went back to the house of Shade Thomas, not far away. However, he soon returned and asked if he could eat breakfast, although the family had about finished. He was told he might do so if he would behave himself. This he failed to do and, upon being reprimanded by Irene Williams, he struck her with his fist three times. It does not seem that the blows were very violent ones.

Appellant then took down from its rack a 22-gauge repeating rifle and pointed it at Irene Williams and said he was going to shoot her if she did not let him rape her and snapped it at her. As the weapon was not loaded no harm resulted, but Bessie Thomas threatened appellant with a knife she had secured from her husband and appellant left the house.

It is not quite clear just how many times appellant came into the kitchen, but the State's evidence tends to show that he came in there at least three times, possibly four. On the last occasion appellant seized Irene Williams around the neck and pulled her out of the kitchen door into the yard, again using language indicative of his intention to rape her. At least two men beside appellant were in the yard at that time and Bessie Thomas was present. A quarrel ensued and much indecent and profane language was used, both by appellant and the women, and rocks were thrown back and forth. Afterward, appellant was induced to retire permanently from the scene.

Both Homer Williams and Walter Thomas testified that they did not interfere with appellant because they were afraid of him, Thomas testifying that he was unable to do so because he was sick with a

"bad disease." Homer Williams admitted that appellant told him of his lascivious intentions toward his wife and he told appellant to go ahead. Some of the State's witnesses testified that appellant said he was going to have some fun with the women. His conduct, as shown by the State, may have represented his drunken notions of fun./

The undisputed evidence is that Homer Williams agreed to take $100 to dismiss the prosecution and that he collected $50 of that amount and actually procured the justice of the peace to dismiss the complaint. Appellant was later indicted by a grand jury and it was upon the charge thus preferred that he was tried and convicted.

The reputation of appellant was shown to be good as to truth and veracity, but bad for morality, and bad for turbulence and quarrelsomeness when he was intoxicated. Nor did Irene Williams escape unscathed. She was said by several witnesses, including her own brother, to bear a bad reputation for peace and quietude and also for veracity and morality. The conclusion is well justified that the people connected with the alleged assault, either as principals or witnesses, were not greatly shocked at the indecent conversation and profanity used on that occasion, nor seriously afraid that appellant would accomplish his alleged lustful designs upon either of the women.

The general rule is that, to convict of assault with intent to rape, there must not only be proof of assault (of which there is here abundant proof), but it must also be shown that the accused intended to have intercourse with the female by force and against her will notwithstanding any resistance on the part of the female. [33 Cyc. 1432.] The Missouri rule is the same. [State v. Espenschied, 212 Mo. 215, l. c. 222, 110 S. W. 1072; State v. Hayden, 141 Mo. 311, l. c. 315, 42 S. W. 826; State v. Owsley, 102 Mo. 678, 15 S. W. 137; State v. Priestly, 74 Mo. 24; State v. Fleming (Mo. Sup.), 177 S. W. 299; State v. McChesney (Mo. Sup.), 185 S. W. 197, l. c. 200.]

There was not a moment during any of the occasions when appellant is said to have made an assault upon Irene Williams or announced his purpose to have sexual intercourse with her that she was alone. Bessie Thomas was present each time and at least one of the men was near by. Unless the bystanders were more brutish and bestial than anything in this record indicates, appellant must have known he had no chance at the time and upon that occasion to have sexual intercourse with this woman, even with her consent, and certainly not against her will and over any resistance she might offer. It is inconceivable that appellant had Mrs. Thomas, the two husbands and the other men present so terrorized that they would

not have interfered. The most we can say of the State's evidence is that it tends to prove an aggravated assault and battery by appellant upon the person of Mrs. Williams, coupled with a coarse and drunken announcement of his lascivious desire.

There was not sufficient proof of an intention on appellant's part (coupled with the assault which was amply proven) to have sexual relations with Mrs. Williams, despite any and all resistance she might offer or any interference by other persons present. The trial court erred in submitting to the jury the question of intent on appellant's part to rape Mrs. Williams and should not have submitted any graver charge than common assault.

It appears unnecessary to notice any other assignments of error which we find in appellant's motion for new trial. The judgment is reversed and the cause remanded. All concur.