STATE of Missouri, Respondent,

v.

Herbert J. BARTEAU, Appellant.

No. 37844.

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 5, 1978.

Daniel V. O'Brien, St. Louis, for appellant.

Ronald L. Boggs, Pros. Atty., G. Jeffrey Lockett, St. Charles, John D. Ashcroft, Atty. Gen., Paul R. Otto, and John M. Morris, III, Asst. Attys. Gen., Jefferson City, for respondent.

SMITH, Judge.

Defendant appeals his conviction by a jury of rape and resultant sentence of two years imprisonment. We affirm.

Defendant's first point is that the information is fatally defective and so the court lacked jurisdiction. Initially this argument is directed to the absence of an information in the trial court. The transcript does not include such an information. By motion granted by this court, the attorney-general has supplemented the record by filing the information. The record as supplemented establishes that an information was filed in Circuit Court.

Secondly, defendant contends that the information fails to allege that the carnal knowledge was forcible. The information states that defendant did "rape, ravish and carnally know the said [victim] against her will." "Rape" and "ravish" both imply the use of force. See State v. Berezuk, 331 Mo. 626, 55 S.W.2d 949 (1932) [8]; State v. Abron, 492 S.W.2d 387 (Mo.App.1973) [5, 6]. The information sufficiently charges all ele-

ments of the crime—carnal knowledge, force, and against the will or without the consent of the woman.

■ Defendant's remaining point is that the evidence failed to establish the essential elements of the crime—most notably force and absence of consent.

The victim was 16 years old, married, and a mother. She was employed by Dial-A-Maid, in St. Charles, a light housekeeping business. She went to defendant's home in response to a request for housecleaning made to her employer. Defendant was at home. The victim did some cleaning and then went into the bedroom to make the bed and clean the room. Defendant approached her from behind and grabbed her breasts. She pushed him away. He then went to the bedroom door and closed it. He again approached the victim and drew a gun and stated he did not want to hurt her. She stated she needed to use the bathroom to remove her tampon, hoping, she testified that she could lock the bathroom door and escape through a window or that knowing she was menstruating defendant would cease his advances. She went into the bathroom but defendant stood in the doorway. When she had pulled her pants down halfway, defendant ordered her to remove them completely. At this time and thereafter until she left the premises, she did not again see the gun. Defendant grabbed the victim, shoved her against a wall, pulled his pants down and rubbed against her for several minutes. At one point the victim was screaming and defendant stated he would have to hurt her. Defendant then pulled her to the bed, pushed her down on it, forced her legs apart and had sexual relations with her. When the act of intercourse was completed, the victim ran to the bathroom and dressed. As she was leaving, defendant offered her money which she refused although she did leave the invoice from Dial-A-Maid. The foregoing was the testimony of the victim. She reported the incident to her employer, had a physical examination, discussed the matter with her husband and her aunt, and then notified the police.

The police arrested defendant and obtained a consent to search his home. He denied that he had a gun. Search of the bedroom uncovered a gun and bullets, and the gun was subsequently identified by the victim as similar to the one defendant had pointed at her. Defendant is 5 feet eight and weighs between 250 and 300 pounds.

Defendant testified that after arriving at his home the victim did some cleaning and then sat on the couch with him. She asked if she could do some cleaning again for him, but he advised her his wife would be back from the hospital the next day following childbirth and no further cleaning service would be required. She then stated that Christmas was coming and asked if he knew of any way she could make money. She then asked if he would like to "play." He accepted and they went into the bedroom and had sexual relations. The victim then did some additional cleaning and then asked defendant for fifty dollars. He refused to give her anything and she became angry and left. Subsequently he noticed his watch was missing. He testified he told the police he had a gun and told them where to find it.

Defendant admits that the evidence establishes carnal knowledge, but contends it does not establish force or that the act was against the victim's will. He then invokes the "utmost resistance" doctrine as an essential proof to negate consent or to demonstrate force.

■ The "utmost resistance" doctrine does not apply in forcible rape cases where the woman is put in fear of personal violence. *State v. Beck*, 368 S.W.2d 490 (Mo. 1963) [3]. If the victim's testimony is believed, as the jury must have, the victim was in fear of personal violence. Defendant threatened her with a gun, stated he would have to hurt her, shoved her against a wall, threw her on the bed, and forced her legs apart. The location of the attack was in defendant's home and while the victim did not see the gun after the initial threat with it, she could reasonably believe it was nearby and accessible to defendant. Her failure to continuously fight, kick, scream

or otherwise actively resist does not establish consent. The case is quite similar to *State v. Beck, supra. See also, State v. Gray*, 423 S.W.2d 776 (Mo.1968); *State v. Bohannon*, 526 S.W.2d 861 (Mo.App.1975). The evidence was sufficient to support the verdict.

Judgment affirmed.

CLEMENS, P. J., and McMILLIAN, J., concur.