**STATE of Missouri, Respondent,**

v.

**Roscoe K. TRUITT, Appellant.**

**No. WD 38063.**

Missouri Court of Appeals,
W.D.

Dec. 30, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 13, 1987.

Application to Transfer Denied
March 17, 1987.

Sean D. O'Brien, Public Defender, David
S. Durbin, Asst. Public Defender, Kansas
City, for appellant.

William L. Webster, Atty. Gen., Philip M.
Koppe, Asst. Atty. Gen., Kansas City, for
respondent.

Before SHANGLER, P.J., and
MANFORD and BERREY, JJ.

BERREY, Judge.

Defendant appeals his jury conviction of
attempted rape. The court sentenced defendant to eight years in the Missouri Department of Corrections and defendant
timely filed his notice of appeal.

Defendant raises two points of error: (1)
that the court erred in giving MAI–CR 1.02
and 2.20; and (2) that the court erred in
overruling defendant's motion for judgment of acquittal at the close of all the
evidence.

■ The defendant claims the court
erred by giving MAI–CR 1.02 and 2.20.
The defendant alleges these instructions
improperly define reasonable doubt and
therefore reduce the state's burden of
proof. This point has been frequently
raised of late and has been repeatedly rejected by our appellate courts. *State v.
Turner,* 705 S.W.2d 108, 110 (Mo.App.
1986). "Once a pattern instructions has
been adopted by the Missouri Supreme
Court, the Appellate Courts are powerless
to declare the instructions erroneous." *Id.,*
at 110.

The complained of instructions are, in
fact, mandatory and follow the dictates of
§ 546.070(4), RSMo Cum.Supp.1984, and
must be given in all criminal proceedings.
MAI–CR2d 2.20, Notes on Use 2; Rule
28.02(a). In MAI–CR2d 1.02 the Notes on
Use (1) and (3) provide that the court: (1)
must read to the jury MAI–CR 1.02 before
voir dire examination, Rule 28.02(a); and
(3) the burden of proof instruction included
herein is the same as MAI–CR 2.20. Defendant's Point I is denied.

■ Defendant next complains that his
overtures toward the victim were misinterpreted; that he only intended to make love
to her and he did not intend to attempt to
rape her.

The facts speak for themselves. The
victim lived with her 10–year-old daughter
in an apartment located in Independence,
Missouri. She had lived there four years
and the defendant was a resident there
when she moved in.

On the day in question the victim had
seen her daughter off to school and gone

back to her apartment. About 11:00 a.m. she came out of her apartment into the hallway for a better view of the street, looking to see if it was still raining. Defendant came quietly up behind the victim and scared her. He told her he was home because during the rainy weather he didn't work. The two talked a bit and he asked to use her bathroom. The victim consented and the defendant entered the apartment. Shortly thereafter the victim entered her apartment and defendant came out of the bathroom. At this juncture he grabbed the victim's blouse and held her; she tried to push him away and was screaming at the defendant to stop. He did not stop but repeated, "Please, come on, please." The victim kept pushing the defendant away and "he kept messing with [her] breasts and trying to pull [her] pants down." The victim kept resisting and screaming and the defendant kept trying to pull her blouse off. She testified: "He tried pulling my pants down and every time I tried to pull my pants up he kept trying to pull my blouse up and I kept trying to push him away and he wouldn't leave me alone." About this time the phone rang and defendant tried to prevent the victim from answering. She did answer and recognized her mother's voice and "yelled for her to call the police." The defendant kept trying to get the phone from her and then he struck her. She attempted to hit him with the phone. Defendant hit her "upside the head so hard that [she] hit the wall." The victim then fell to the floor and defendant got her pants down and unbuckled his pants. Her pants were down around her ankles and her underpants down by her knees. She kept yelling and trying to hit defendant with the phone at which point defendant broke off the attack and exited the apartment.

Apparently the jury believed the defendant had by his actions demonstrated a specific intent to engage in nonconsensual intercourse with the victim. It is clear that his actions and her protestations could have contributed to this belief by the jury.

The evidence and all reasonable inferences drawn therefrom, must be viewed in a light most favorable to the jury's verdict and contrary evidence or inferences drawn therefrom, should be disregarded. *State v. Newhart,* 539 S.W.2d 486, 487 (Mo.App. 1976); *State v. McDonald,* 661 S.W.2d 497, 500 (Mo. banc 1983); *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1977), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

Specific intent to engage in sexual intercourse without consent is an essential element of the crime of attempted rape. *State v. Roden,* 674 S.W.2d 50, (Mo.App. 1984).

Appellant's contention that the state's evidence failed to demonstrate a specific intent on defendant's part to engage in sexual intercourse without the victim's consent lacks credibility and in view of the facts, indeed strains one's finer senses. Defendant's Point II is denied.

Judgment affirmed.

All concur.