**STATE of Missouri, Respondent,**

v.

**William HAMM, Appellant.**

**No. 38863.**

Missouri Court of Appeals,
Eastern District.

Feb. 6, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 16, 1979.

Application to Transfer Denied
April 10, 1979.

Claude Hanks, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Weldon W. Perry, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

PER CURIAM.

Defendant was convicted of assault with intent to rape and was sentenced to two years imprisonment. His appeal is based on the single point that the trial court erred in overruling his motion for acquittal for the reason that the state failed to produce sufficient evidence to sustain the jury's verdict against him. Despite defendant's counsel's utter disdain for Rule 84.04 pertaining to appellate briefs [1], we are constrained to apply the plain error doctrine of Rule 27.20(c), for there is insufficient evidence to support the conviction. We therefore reverse the judgment.

When the evidence is viewed in the light most favorable to the state, it appears that the prosecutrix had applied for work at a bar and restaurant in Troy at a time when defendant was also present. Defendant followed her out of the bar and engaged her in a conversation in which he mentioned that he owned three restaurant-bars in Elsberry

---

1. Defendant's brief contains a statement of facts which is no more than 22 pages of verbatim testimony reproduced from the transcript, plus 2 pages of facts related and recited to favor defendant, which makes the brief totally deficient. *State v. Robinson*, 555 S.W.2d 667 (Mo.App.1977); *State v. Schulten*, 529 S.W.2d 432 (Mo.App.1975).

and would like for her to manage them for him. The prosecutrix and defendant left her motor vehicle at her home, where he met and visited with her mother and son, and then proceeded together in defendant's car, ostensibly to view his restaurants in Elsberry. A stop was made along the way to purchase some beer, which both consumed, and another stop was made at a tavern near Winfield to answer nature's call. Both played some pool at the tavern and consumed more beer. The interlude in their trip was made longer by reason of the fact that defendant could not get his car started. While waiting for automotive help, at defendant's suggestion both took a walk in a nearby woods. The prosecutrix related that in the woods he commenced his flirtation: "he started pushing me up against them [the trees] trying to kiss me." But when asked by the prosecutrix to cease his dalliance, defendant immediately complied with her request and stopped his advances. The two returned to the tavern to drink beer and play more pool. When defendant's auto was finally repaired—three to four hours after their arrival at the tavern in Winfield—the two proceeded on their way to Elsberry, where the defendant announced that he had always engaged in sexual relations with every girl that worked for him. He then turned off the main highway onto a gravel road. The prosecutrix indicated an intention to get out of the car as it was moving, and defendant told her that if she jumped from the moving auto he would "drop me within 10 or 20 feet and I would never see my kid again." He then stopped the car, moved over to the prosecutrix' side, and without any indication of resistance from her, lifted her dress and tugged at her undergarments in an effort to pull them down. His efforts were clumsy and he was unable to remove any of her garments or even lower them as far as her knees. But in the excitement of the situation he reached a sexual climax and spilled seminal fluid on the prosecutrix' clothing. Defendant immediately took the prosecutrix home where he again talked to her mother, and the prosecutrix voluntarily gave him her telephone number—a rather curious action. Her explanation for giving him the number was so that if he would call to meet her again, she would kill him. Fifteen to twenty minutes after the defendant left her home, the prosecutrix reported the incident to her mother.

Defendant's version of the evidence differs mightily. He testified that the prosecutrix was the aggressor, had requested $200 for her favors and that he had tried to resist her. He acknowledged the fact of his climax and testified that as soon as he had taken the prosecutrix to her residence, he immediately went home to tell his wife of the day's events—another curious incident.

■ The law regarding uncorroborated testimony has been well stated in *State v. Baldwin*, 571 S.W.2d 236 (Mo. banc 1978), a rape case where the parties initial association was chummy, l.c. 239:

Defendant complains that the State's case rested almost entirely on the testimony of the prosecutrix and that the circumstances leading up to the alleged rape suggest that corroborating testimony was necessary. The basis for this argument is that there was evidence that they had been drinking and dancing together in a bar prior to the occurrence, that they had been acquainted for about two years and that she cooperated by removing her clothing prior to the intercourse. While these are circumstances the jury may weigh in determining the credibility of the prosecutrix, the rule in this state is that a conviction in cases of rape may be had upon the uncorroborated evidence of the prosecutrix. It is only in those cases where the evidence of the prosecutrix is that of a contradictory nature or, when applied to the admitted facts in the case, her testimony is not convincing and leaves the mind of the court clouded with doubts, that she must be corroborated or a judgment cannot be sustained. *State v. Burton*, 355 Mo. 467, 196 S.W.2d 621, 622–23 (1946).

Whether the prosecutrix may have offered no resistance to defendant's demands by reason of fear is a jury question with the jury being the arbiter of disputed facts, the probabilities of the evidence, and of the credibility of the witnesses. *State v. Baldwin*, supra; *State v. Graham*, 527 S.W.2d 936 (Mo.App.1975); *State v. Bohannon*, 526 S.W.2d 861 (Mo.App.1975).

■ However, we have the obligation to review the facts and consider them in relationship to the applicable law of the case. The difficult issue here is the matter of non-consent and resistance. Where there is a fear of violence that overpowers a woman's mind to resist, there is no consent. And if resistance would be futile, proof of such is unnecessary. *State v. Stamps*, 569 S.W.2d 762 (Mo.App.1978); *State v. Davis*, 557 S.W.2d 41 (Mo.App.1977).

■ Of course, in a rape case the prosecutrix is required to use the utmost resistance of which she is capable. But in an assault with intent to rape, the doctrine of utmost resistance is not applicable, for the fact the rape is not consummated is sufficient to establish that there was resistance commensurate to thwart the effort at completing the crime. *State v. McChesney*, 185 S.W. 197 (Mo.1916). In order to convict of assault with intent to rape, the state must prove the assault and show that the defendant intended to have sexual intercourse with the prosecutrix "forcible and against her will, by using such force as would at all hazards overcome her resistance." *State v. Hawkins*, 544 S.W.2d 880, 885 (Mo.App. 1976); *State v. Williams*, 324 Mo. 179, 22 S.W.2d 649 (1929); *State v. Comer*, 296 Mo. 1, 247 S.W. 179 (1922); *State v. McChesney*, supra.

In reaching our decision in this difficult case, we are guided by the following decisions of our Supreme Court relating to assault with intent to rape. We are persuaded by the fact that in these cases finding that conviction for assault with intent to rape could not stand, the improper conduct of the accused was more egregious than that of the defendant here, and the efforts at resistance by the complainants far greater than the prosecutrix here.

In *State v. McChesney*, supra, no more than common assault was found where, after soliciting intercourse for about four to five hours, the defendant scuffled with the prosecutrix, threw her to the floor and tried to raise her clothing. The case against defendant for assault with intent to rape was reversed. In *State v. Williams*, 324 Mo. 179, 22 S.W.2d 649 (1929), the defendant was convicted of assault with intent to rape where the evidence showed that he had fondled the prosecutrix, threatened her with a gun, and even struck her. However, in finding that there was insufficient proof of defendant's intention to have sexual relations despite any and all resistance which the prosecutrix might offer, the court reversed, holding that the evidence showed only common assault. In *State v. Osborne*, 246 S.W. 878 (Mo.1922), the defendant forced the prosecutrix off her horse and into some bushes with the announced intention of indulging in her sexual favors. While charged with assault with intent to rape, he was convicted only of common assault. The judgment was affirmed with the court noting that "[i]t did not appear that defendant intended to have carnal knowledge of prosecutrix at all events, and notwithstanding any resistance on her part." Id. at 880. In *State v. Fleming*, 177 S.W. 299 (Mo.1915), the defendant threw the prosecutrix under a cot, tried to force his hands under her clothing and even suggested throwing her off a building in his struggle for sex. In finding the evidence insufficient to support a conviction of assault with intent to rape, the Supreme Court said, id. at 302:

In the case at bar there is no evidence of a violent attack on the part of defendant, such as would allow the inference that he intended to have sexual intercourse by the use of force and against the consent of prosecutrix. If such was his

intention, he had ample opportunity to have accomplished his desire, or to at least have acted with such violence or force in that behalf as to have disclosed that such was his intention, and yet no violence of such a character is disclosed by the evidence.

In *State v. Thomas*, 351 Mo. 804, 174 S.W.2d 337 (1943), the defendant's throwing prosecutrix on a bed, lying on her body, declaring his intent to have intercourse and wrestling with her, was held too weak to establish that he intended to accomplish his purpose "by force against the will of the prosecutrix and by overcoming her utmost resistance." [2] Id. at 344.

■ We have meticulously reviewed the evidence and find that there is insufficient evidence of force or lack of consent to justify a finding of defendant's guilt of the charge. The record is absolutely destitute of anything that would show that the prosecutrix had resisted defendant's sexual advances. Her attitude from the record is one of total passivity. She had easily rebuffed him in his effort to kiss her when walking in the woods near Winfield. She knew of his penchant for amour and still accompanied him. Although she testified that defendant had threatened to whip her, she was young and according to the record, apparently larger than he (she was 24, 5′8″ and 160 pounds). The prosecutrix did not have any reason to suspect that the defendant possessed a weapon, nor did he strike, choke or use or display any force whatsoever. He was unsuccessful in his efforts to remove any of her clothing and none was torn. He did not even lower his trousers, although his sex organ was apparently protruding from his trousers' fly. Under the circumstances, we believe that to uphold the conviction in this case the record must contain evidence to show at least some resistance, or some reason by which resistance would have been unavailing, or that fear prevented her from exercising any resistance. *State v. McChesney*, supra. She had no reason to believe that defendant would have succeeded in his lustful desires by force had the prosecutrix sought to repel him.

The record is simply deficient regarding the required proof for assault with intent to rape. The state has failed to prove that the defendant intended to have sexual intercourse with the prosecutrix "forcible and against her will, by using such force as would at all hazards overcome her resistance." *State v. Thomas*, supra; *State v. Williams*, supra; *State v. Osborne*, supra; *State v. McChesney*, supra; *State v. Fleming*, supra. Defendant displayed no array of physical force, *State v. Davis*, supra, or genuine threat of physical violence, *State v. Barteau*, 571 S.W.2d 483 (Mo.App.1978). We believe that the facts of this case militate strongly for reversal, in that the state has failed to establish the force or resistance necessary to support a conviction for assault with intent to rape. While the evidence may well show common assault, based on the recited case precedent, it does not support the conviction here. The fact of the prosecutrix' knowledge of defendant's amorous tendencies, coupled with her willing continued association with him after his initial advance in the woods and the lack of showing of any resistance or real basis for fear, lead us to the conclusion that the judgment should be reversed. *State v. Thomas*, supra; *State v. Williams*, supra; *State v. Osborne*, supra; *State v. McChesney*, supra; *State v. Fleming*, supra.

Judgment reversed.

All judges concur.

---

2. Contra, *State v. McChesney*, supra, regarding need for utmost resistance in assault with intent to rape.