STATE of Missouri, Respondent,

v.

Harold MONTGOMERY, Appellant.

No. 40585.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 30, 1979.

Robert C. Babione, Public Defender, Terry Burnet, Blair K. Drazic, Asst. Public Defenders, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Gordon L. Ankney, Asst. Circuit Atty., St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant appeals his conviction by a jury of the charge of stealing a motor vehicle. He was sentenced by the court under the Second Offender Act to serve a term of five years in the Department of Corrections.

The defendant does not challenge the sufficiency of the evidence. Therefore, it is unnecessary for us to go into a detailed account of that evidence. The state introduced evidence gathered from a joint federal and local police undercover fencing operation which was located at 1831 Chouteau in the City of St. Louis. The operation ran from January 5 to September 8, 1977, during which time all fencing transactions at the store front counter were recorded on video tape.

At trial, the State introduced State's Exhibit No. 4, a video tape, and played it to the jury. The exhibit showed a person transacting a sale of a 1975 LTD to the fencing operation for $100. Defense counsel stipulated that the person appearing on the tape was the defendant. The recording was made on July 5, 1977, the date on which the victim's motor vehicle was stolen. On the tape defendant indicated that the car came from Creve Coeur. The victim testified that she had parked her car in the City of St. Louis. Defendant had in his possession a "dent-puller", a device which can be used to punch out locks on automobiles. The State also introduced another portion of a video tape on which defendant appeared, this being State's Exhibit No. 3 and in that tape defendant stated his name was Harold Montgomery.

Defendant first contends that the court erroneously found him to be subject to the Second Offender Act. During the trial and out of the presence of the jury, the state introduced certified copies of a judgment of the Circuit Court of St. Louis County convicting defendant of attempted stealing of at least $50. The evidence indicated that the defendant served 142 days on that charge. Initially, the defendant had been charged with attempted burglary. Defendant contends the judgment in that case was invalid on its face because the State failed to file an amended indictment or information charging defendant with attempted stealing of at least $50.

It is clear that certified copies of prior judgments and sentences and prison records which are regular on their faces and

proper in form and substance are admissible in evidence. They constitute sufficient evidence to support a trial court's finding that the Second Offender Act applies to a prosecution. *State v. Goff*, 449 S.W.2d 591, 593–94 (Mo. banc 1970).

Here, defendant claims that the certified judgment of his first offense was defective because defendant was found guilty without an amended information being filed and therefore, that the court which handled defendant's first offense failed to have jurisdiction. Defendant relies on *Montgomery v. State*, 454 S.W.2d 571 (Mo.1971) to support this position. In *Montgomery*, the record revealed that the plea was entered and defendant sentenced prior to the information being amended or filed. The Missouri Supreme Court held that the court was without jurisdiction and that the judgment and sentence were void.

The facts involved in the case at bar are distinguishable from *Montgomery* and fall clearly under the purview of *Wilkinson v. State*, 461 S.W.2d 283 (Mo.1970) because the state's amendment was made prior to the plea being entered. In *Wilkinson* the Supreme Court found the filing of an information to be sufficient to give the court jurisdiction to permit amendment by interlineation. The proposed amendment by interlineation was brought to the attention of the trial court in the presence of the defendant with no objection from counsel but was never actually entered. Judge Seiler speaking for the Supreme Court stated: "[I]t would be excessively technical to reverse and remand the conviction on the mere fact that the interlineation was not actually entered." *Id.* at 285. *Accord, Dumpka v. State*, 507 S.W.2d 71, 74 (Mo. App.1974).

In the instant case, the defendant was properly before the court on the charge of attempted burglary. The charge read that defendant did "burglariously, forcibly break and enteter [sic] dwelling house . . . with the felonious and burglarious intent to steal. . . ." Defendant entered a plea of not guilty to the charge on June 7, 1974. On September 23, 1974, in the presence of

the defendant and his attorney, the State asked leave to amend the charge to attempted stealing over the value of $50. Prosecuting Attorney stated: "This is a copy of the memorandum." The court then considered the charge amended. Next, defendant's attorney stated that he waived filing and reading of the amended information, and asked leave to plead guilty to the amended charge of attempted stealing over $50, a misdemeanor. Before accepting defendant's plea of guilty, the court extensively questioned defendant explaining the range of punishment. The defendant was then sentenced.

It is clear that the proposed amendment was made in the presence of defendant with no objection, such as was done in *Wilkinson v. State, supra.* Unlike *Montgomery v. State, supra*, it was never intended that a new amended information be filed in defendant's case. Apparently, the memorandum was the intended amendment.[1] The defendant was properly before the court on a felony charge. The court had jurisdiction on that charge. The state amended, charging defendant with a misdemeanor. We agree with Judge Seiler's statement in *Wilkinson* that to reverse and remand the conviction "under these circumstances would be excessively technical." The defendant was properly tried under the Second Offender Act.

■ Defendant next contends that the court erred in withdrawing Instruction No. 5 and submitting in lieu thereof Instruction No. 5a. The substitution occurred after extended deliberation by the jury and in response to a jury question.

The verdict director submitted to the jury allowed the finding of guilty if the jury found, among other elements, that the defendant or another took the automobile. Submitted along with this verdict director

was defendant's converse, Instruction No. 5.[2] This converse required a finding of not guilty unless the jury found "the defendant took the automobile."

During deliberation, the jury sent the court a note stating that there was no doubt as to defendant's participation, but that there existed some doubt as to his actions in stealing the automobile.[3] The court then withdrew Instruction No. 5 and submitted Instruction No. 5a which required a finding of not guilty unless the jury found and believed "defendant or another took a Ford automobile owned by Ruby Hickman, and that the defendant knowingly and intentionally aided or encouraged the person to take the automobile. . . ."

The defendant objected to the substitution alleging that it was improper to substitute an instruction after the case had been submitted. Further, he claimed that the instruction was an improper comment on the evidence.

We find no Missouri case wherein an instruction such as this was substituted after the jury began its deliberation. However, our Supreme Court stated in *State v. Sawyer*, 367 S.W.2d 585 (Mo.1963); "[The c]ourts may withdraw or correct an instruction, and it is the duty of the court to do so, at any time during the trial, especially before the case has been submitted, if upon reflection the same is considered to [be] erroneously given." *Id.* at 588. The defendant's converse was improper because it was inconsistent with the verdict director which allowed the finding of guilty if the jury found, among other things, that the defendant *or another* took the automobile. The substituted instruction properly stated the law and the defendant makes no claim that it did not. The defendant claims that he was prejudiced because the instruction

---

1. Defendant's brief concedes: "A memorandum did appear which indicated that the State amends the charge. . . ."

2. Instruction 5 is Modified MAI.CR 2.14. Also submitted was MAI.CR 2.10 as Instruction 6.

3. "There is some doubt to the actual stealing of automobile by Mr. Montgomery, but his participation is not in doubt. Question. Are we to rule only on Mr. Montgomery stealing of the automobile. /s/ Jesse Henderson, Foreman. P.S. If we are to ruled [sic] only on the stealing of the automobile, the juror's [sic] cannot come to agreement."

was submitted after he had argued the case. However, defendant fails to point to any part of his argument that was affected by the substituted instruction. Neither do we find it to be an improper comment on the evidence.

Although we cannot say that in every case the court can substitute an improper instruction with a proper one after the case is submitted to the jury, the defendant has failed to show and we find no prejudice to defendant by the court's action in this case.

◼ Defendant finally contends that the trial court erred in allowing the transcripts of two video tapes to be passed to the jury. The two video tapes that were transcribed were State's Exhibits 3 and 4.

The transcriptions were numbered as exhibits but were not admitted into evidence. No one testified in any respect as to these exhibits. The jury was permitted to follow along as the tapes were being played. Defense counsel objected claiming that the transcripts were never authenticated and that they were an opinion invading the province of the jury.

We believe that the transcripts in this case were improperly placed before the jury. However, we do not find that the defendant was in any way prejudiced by this placement. Other witnesses testified as to statements made by defendant and to what occurred in the room when the defendant sold the automobile to the undercover agents. Furthermore, although the video tapes were viewed and heard by the jury, the defendant makes no objection here to the admission of the tapes. Defendant was given ample opportunity to check the accuracy of the transcripts before they were presented to the jury. On appeal, he makes reference to only one statement which he states is not clear on the tape and therefore could be different in the transcript. We have viewed the video tapes and read the transcripts and find no inconsistencies. Finding no prejudicial error here, we admonish the courts to be very careful in the use of transcriptions.

For what we believe to be an excellent set of guidelines for the use of transcripts see *U. S. v. McMillian*, 508 F.2d 101, at page 105–106 (8th Cir. 1974) wherein Judge Webster speaking for the court states:

The best evidence of the conversation is the tape itself; the transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify that he has listened to the recordings and accurately transcribed their contents. *Cf. Fountain v. United States*, 384 F.2d 624, 632 (5th Cir. 1967), *cert. denied*, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances in which it will be replayed or the need to identify the speakers, *see United States v. Bryant*, 480 F.2d 785, 790–791 (2d Cir. 1973); *Fountain v. United States, supra*, 384 F.2d at 632; *United States v. Hall*, 342 F.2d 849, 853 (4th Cir.), *cert. denied*, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case this will not be prejudicially cumulative. *United States v. Fountain [Fountain v. United States,] supra*, 384 F.2d at 632. Transcripts should not ordinarily be read to the jury or given independent weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference. Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *See gen-*

*erally* 17 Am.Jur.P.O.F. Tape Recordings as Evidence. §§ 54–56 (1966).

Judgment affirmed.

GUNN and CRIST, JJ., concur.