**STATE of Missouri, Respondent,**

v.

**James Edward GREER, Appellant.**

**No. 41690.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 28, 1981.

R. Jon Bopp, Ballwin, for appellant.

John Ashcroft, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of forcible rape and the fifteen year prison term imposed by the court upon the jury's failure to agree on punishment. We affirm.

Defendant's first point is that the evidence was insufficient to support the verdict. This arises under the "plain error" doctrine because of defendant's failure to file a motion for directed verdict at the close of the entire case. We review the point because if the evidence is insufficient to establish defendant's guilt, his conviction would be a manifest injustice. Rule 29.-12(b); *State v. White*, 439 S.W.2d 752 (Mo. 1969) [2].

Defendant testified that he had sexual relations with the victim. His contention on appeal is that the evidence is insufficient to establish lack of consent, or that the victim resisted to the utmost of her ability. Rape is a crime of violence involving the non-consensual invasion of a woman's body. Sexual intercourse achieved through fear of injury is not consensual. *State v. Berry*, 593 S.W.2d 254 (Mo.App. 1980) [1–4]. "Utmost resistance" is not required where the woman is put in fear of personal violence. *State v. Beck*, 368 S.W.2d 490 (Mo.1963) [3].

"Where there is a fear of violence that overpowers a woman's mind to resist, there is no consent. And if resistance would be futile, proof of such is unnecessary." *State v. Hamm*, 577 S.W.2d 936 (Mo.App.1979) [2].

The 19 year old white victim testified she was raped by four black men and assaulted by a fifth in the Meacham Park area of St. Louis County. Defendant was the first attacker. The victim stated that she went to a liquor store on Kirkwood Road at approximately 10:30 p. m. to purchase cigarettes. A large number of young black men were congregated outside the liquor store and the victim was apprehensive. She nevertheless left her car and headed toward the entrance to the liquor store. As she was proceeding to the entrance someone snatched her purse. In her efforts to regain her purse she was harassed by several of the assembled males. Ultimately her purse was returned to her (minus the money and identification materials) by defendant who had retrieved it from the thief. The victim returned to her vehicle and entered. Immediately defendant entered the car on the passenger's side and a companion entered the back seat of the vehicle. Several other men surrounded the car. The victim suspected that defendant had a knife concealed, but never saw one. After some delay defendant ordered the victim to drive into the Meacham Park area and onto a gravel road in a sparsely occupied area.

After stopping the automobile at defendant's request, defendant exited the vehicle. He ordered the victim to remove her pants, which she refused to do. Defendant pulled them down and partially off, forced the victim down on the gravel road and despite her protestations had sexual intercourse with her. His companion then had sexual intercourse with the victim in the back seat of the car. When these acts had concluded the three left the gravel road and proceeded to another location. At the suggestion of either defendant's companion or the victim, the victim gave a note to the two men that she had voluntarily "fucked"[1] them. In that note she intentionally incorrectly spelled her name. There were several other men at the second location, one of whom entered the car and directed the victim to return to the gravel road where he had sexual intercourse with her. This was repeated by a fourth man who entered the car when the third man left. Another man then attempted to attack the victim and, after her attempts to flee, physically assaulted her. She escaped to her car and with the fifth man hanging on the hood managed to find her way out of Meacham Park, caused the fifth man to fall from the automobile and was stopped by a police officer for speeding at which time she reported her ordeal.

Her testimony warrants the conclusion that she did not physically attempt to resist defendant's attack and that until the assault by the fifth man did not attempt to escape although some possible (although not sure) occasions to do so presented themselves. The victim testified that defendant was extremely forceful and aggressive and that he became angered upon her failure to obey his orders. She also testified, or it could be inferred from her testimony, that she was intimidated from the time her purse was stolen,[2] that she physically feared the defendant and his companion, that she was crying or sobbing at various times throughout the ordeal, that she did not agree to intercourse and in fact expressed her unwillingness to engage in intercourse to defendant and his companion, and that the note was written in an attempt to obtain her release from the group of men, including defendant.

Defendant presented evidence from which it could have been found that the victim voluntarily consented to intercourse with defendant and his companion because they had been instrumental in returning the purse, and that she agreed to and did meet them at the site of the original intercourse where she drove and they walked. The jury obviously believed the victim's recitation of the occurrence rather than that of defendant and his witness.

▮ A charge of rape can be established by the uncorroborated testimony of the victim unless it is so inherently contradictory or unbelievable as to require corroboration. *State v. Gray*, 423 S.W.2d 776 (Mo.1968) [4, 5]. The victim's testimony here is not unbelievable nor contradictory. The jury, as finders of fact and assessors of credibility, could have found that the victim succumbed to the intercourse as a result of fear engendered by (1) the numbers and antagonism of the men involved at the commencement of the occurrences, (2) the possibility defendant had a knife, (3) the defendant's aggressive actions and conduct, (4) the presence of two strong men at the rape site, (5) the deserted nature of the area, (6) the force used by defendant to partially undress her and force her to the ground, and (7) the defendant's refusal to honor her entreaties not to engage in sexual conduct with her. The jury could also believe the editing and acceptance of the note reflected a consciousness of guilt by defendant. The jury could also have concluded that resistance would have been futile and that none was required. The evidence was sufficient to support the verdict.

▮ Defendant next complains of the action of the trial in giving MAI–CR 1.10 (commonly called the "hammer" instruc-

---

1. The use of the obscenity was at the insistence of the men; the victim had originally used "sexual relations" and alternatively "partied."

2. The victim weighed 100 pounds.

tion) and MAI–CR 4.50, which advises the jury that if it is unable to agree on punishment it may return a verdict of guilt and let the court set punishment. The giving of both instructions is discretionary. *State v. Doepke*, 536 S.W.2d 950 (Mo.App.1976) [6]; *State v. Jones*, 545 S.W.2d 659 (Mo.App. 1976) [5–7]; *State v. Carroll*, 562 S.W.2d 772 (Mo.App.1978) [4, 5]. The "hammer" instruction was not given until the jury had been deliberating for over nine hours and by note had advised the court it was at an impasse. The court made no inquiry of how the jury stood so there could have been no coercion from that score. The court had three hours previously asked the jury if it believed further deliberations were worthwhile and upon receiving an affirmative response had ordered dinner for the jury and sent them back to deliberate without giving MAI–CR 1.10. It would be difficult to find a situation in which MAI–CR 1.10 was given in less coercive manner and more justified circumstances.

The same is true of MAI–CR 4.50. Shortly after MAI–CR 1.10 was given the jury inquired if a unanimous vote was required for punishment. The court responded that the jury should follow the instructions. Not until almost two hours later, after total deliberations of almost eleven and one-half hours did the court give MAI–CR 4.50. We find no abuse of discretion.

■ Defendant also complains of certain comments made by the court at the time of giving the two challenged instructions. We find nothing coercive about any of these comments. Most dealt with facts the jury already knew such as that they had been there all day. The final comment was that the court would not keep the jury much longer. Far from being coercive, such a statement would tend to indicate that if the jury could not agree shortly they would be discharged. We find no error.

■ Finally, defendant predicates error upon the trial court's failure to grant a new trial because of newly discovered evidence which had been withheld from the defendant by the prosecution. This "evidence" was that the victim and possibly some other prosecution witnesses had submitted to polygraph examinations.[3] Defendant contends the failure of the prosecution to furnish the results of these tests constituted a failure to make discovery of results of scientific tests which had been requested by defendant. First, we note that the material was not "newly discovered." Polygraph examinations were originally referred to in a motion in limine granted on the second day of trial. Defendant made no request for the results of the examinations at that time, nor sought any other relief for the failure to make discovery. The court could have refused the relief sought by defendant in his motion for new trial on that ground alone. Secondly, the Supreme Court of this state has held that polygraph examinations "are unreliable evidence." *State v. Biddle*, 599 S.W.2d 182 (Mo. banc 1980) [4]. They lack the necessary scientific acceptance to be considered scientific tests and their results are inadmissible into evidence even if agreed to. In view of *Biddle*, polygraph examinations are nothing more than a lay opinion of credibility. In that posture we can see no basis for compelling their disclosure or any prejudice to defendant in failing to receive them.

Judgment affirmed.

SATZ, P. J., and SIMON, J., concur.

---

3. The only indication of the results of these examinations in the record is that the victim "passed" the test.