**STATE of Missouri, Respondent,**

v.

**George HANNETT, Appellant.**

**No. WD 37111.**

Missouri Court of Appeals, Western District.

June 17, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 1986.

---

Dennis Gooden Public Defender's Office, Columbia, for appellant.

Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and NUGENT and GAITAN, JJ.

Defendant-appellant, George Hannett is appealing from convictions of forcible rape, § 566.030 RSMo Cum.Supp.1984, forcible sodomy, § 566.060 RSMo Cum.Supp.1984, and kidnapping, § 565.110 RSMo 1978. He appeals his conviction alleging insufficient evidence to support the charges and failure of the trial court to timely submit the instruction defining "deviate sexual intercourse." MAI–CR2d 33.01. The decision of the trial court is affirmed.

Appellant has challenged the sufficiency of the evidence, therefore the following discussion of the facts is necessary. The evidence showed that the victim, Shirley Estell, obtained a divorce from the appellant on January 25, 1984. She testified that the basis for the divorce was the violence and financial irresponsibility of appellant. Ms. Estell, a registered nurse, retained custody of their only child, Indra. She testified that appellant harassed her from October, 1983 till March, 1984 about getting back together. Appellant often used their daughter as a means to get the victim's attention and participation in certain activities.

During the trial Ms. Estell testified to several incidents of harassment and physical violence inflicted upon her by the appellant which occurred prior in time to the charges which led to his conviction here. Those acts included attempted suicide, stabbings, forced sexual intercourse as well as forced anal intercourse. In addition, the appellant had pushed the victim down stairs in a fit of anger. These acts, and others, caused the victim to get a protective order.

According to the testimony of the victim, on March 27, 1984 at approximately 8:45 a.m., she was delivering Indra to the Montessori school when the appellant suddenly came up from behind, told her in a mean voice to get in the car and took her car keys. Ms. Estell pleaded with appellant to let Indra go into the school so he walked her to the building keeping the victim's car keys with him. Appellant returned to the car and exhibited what appeared to the victim to be a pistol. Appellant drove to the Hillside Motel and got a room. In a menacing voice, the appellant told the victim to undress. When she tried to stall, appellant became hostile. The victim complied "because I felt I was in physical danger." Appellant performed oral sex on the victim, but when she did not respond, appellant forced his penis into her mouth. Appellant made the victim gag and choke on his penis while threatening to kill her because she had previously called the police on him. Appellant then engaged in sexual intercourse with the victim while continuing to threaten her with physical harm. Appellant and the victim then drove back to pick up Indra at school and proceeded to his cousin's house where a group of his relatives were present. The victim did not ask for their help because she felt they would not help her. She was also afraid appellant would attack her if she said anything because he had done so in front of people in the past. The group played cards, drank liquor and smoked marijuana, although the victim herself did not smoke or drink. Appellant then drove the victim and their daughter to a barbecue place to eat, again keeping the keys while ordering. The victim did not run because she was afraid and, at that point, did not know if she could successfully charge the appellant with anything. In addition, she was concerned about her daughter's safety. They drove to appellant's place where he lived with his mother. Appellant forced her to

consume an alcoholic drink. The victim did not try to run or call because she stated that appellant usually unplugged the phones, locked the doors from the inside, and kept the car keys with him.

At this point, appellant forced the victim to submit to sexual intercourse again. She still felt she was in danger and testified that to her knowledge he still had this gun on him. Appellant also made threats implying that he was going to kill her and dump her body somewhere. When appellant asked her if they were going to get a place together and the victim said no, appellant tied her wrists to a bed frame and tied her feet to a set of bar-bells, thus positioning her spread-eagle on the bed. Appellant then smothered her with plastic so she could not breathe, using a lot of force and pressing hard on her face. Ms. Estell was able to free her right wrist to tear the plastic off her face to prevent her suffocation. Appellant then attempted to have sexual intercourse but had trouble achieving an erection. He continued the threats about dumping her body and then forced the victim to engage in sexual intercourse. She stated she submitted out of fear for her life. Appellant finally untied her, but she did not run because she felt she did not really have an opportunity to escape. In order to appease appellant, the victim agreed to appellant's request to get back together.

The next morning appellant drove the victim and their daughter to her mother's home to get cleaned up under the belief that they were going to get a marriage license. Ms. Estell seized this opportunity to call the police and was later taken to a hospital. The victim testified that she did not consent to any of the sex acts that were perpetrated upon her.

Appellant was arrested shortly after a crime scene investigation and search of his apartment. Pictures were taken of the ropes and belt which were used to tie the victim to the bed. Detective Rogge of the Kansas City, Missouri Police Department interviewed the appellant who admitted having sexual intercourse with the victim

and tying her to "scare her into understanding his point of view." Appellant admitted to a police officer that he was a violent person and that he was undergoing psychiatric treatment.

Appellant testified that the sex acts were all consensual. He admitted he tied his ex-wife up to scare her and that he was angry because she did not promise to get back together with him. The appellant states the acts of sexual intercourse, deviate sexual intercourse and kidnapping were all consented to by the victim. Appellant moved at the close of all of the evidence for a judgment of acquittal or alternatively for a new trial. These motions were denied and the case was submitted to the jury.

Approximately two hours after jury deliberations had commenced, the court submitted instruction 11A to the jury both orally and in writing. Instruction 11A defined "deviate sexual intercourse". This was in response to the following jury question: "Is forced oral sex sodomy?" The appellant objected because he claimed the definition highlighted that testimony and because it had not been included in the original instructions. The jury came back with verdicts of guilty on all counts within one hour of the court's tendering of 11A.

The issues raised by appellant on appeal are as follows. First, whether or not the trial court erred in denying appellant's motion for a judgment of acquittal at the close of all the evidence on the charges of forcible rape, forcible sodomy and kidnapping. Second, whether or not reversible error was committed by the trial court's failure to timely give a required definition instruction regarding "deviate sexual intercourse." MAI–CR2d 33.01.

When the appellate court reviews a case to determine whether there was sufficient evidence to support appellant's motion for a judgment of acquittal at the close of all of the evidence, it must consider as true all evidence favorable to the state as well as all reasonable inferences that may be drawn therefrom. *State v. Chamberlin*, 648 S.W.2d 238, 240 (Mo.App.1983). A review of the elements which make up the

crimes of forcible rape, § 566.030(1)(4), forcible sodomy, § 566.060(1)(4), as well as the definition of deviate sexual intercourse, § 566.060 RSMo and MAI–CR2d 33.01 indicate that the statutory requirements have been met.[1]

There is testimony supporting the fact that appellant had both sexual intercourse and deviate sexual intercourse with the victim who was not his wife. Further, there is testimony that the acts were without the victim's consent and a direct result of forcible compulsion. The victim testified that the appellant showed her a gun which put her in fear for her life. Virtually every element of forcible rape and forcible sodomy have been established either by the admissions of appellant or testimony of the victim; except the element of consent. Appellant asserts the victim consented to the acts of sexual intercourse and deviate sexual intercourse which she denies.

■ Intercourse which is not resisted because of fear is not consensual. Lack of consent may be established by a showing of actual force or a showing that the victim submitted because of fear induced by violence or *threats of violence. See State v. Berry,* 593 S.W.2d 254 (Mo.App.1980); *State v. Davis,* 557 S.W.2d 41, 43 (Mo.App. 1977).

The victim testified that her state of mind upon seeing the pistol was fearful. She obviously took into account the previous experiences when the appellant had harassed her and inflicted physical and mental harm upon her.

The issue of consent was discussed by this court in *State v. Salkil,* 659 S.W.2d

330, 333 (Mo.App.1983). In *Salkil,* the victim was held captive in a speeding truck where she was talked to throughout the ordeal in a threatening manner. The defendant argued that since he flourished neither a weapon nor shook a fist, there was no proof of lack of consent. The victim testified she submitted to his demands because of fear of physical injury. The court held that such compliance was non-consensual. There was no requirement of a showing of "utmost resistance" in the face of threatened violence. *See also State v. Digheria,* 617 S.W.2d 524 (Mo.App.1981).

■ Where resistance is futile or not otherwise feasible because of physical incapacity to resist a threat of violence, the law expects none. *State v. Wynn,* 357 S.W.2d 936, 939 (Mo.1962). The quality of resistance the law expects in the face of imminent sexual assault is only that equal to the possibility. *Digheria,* 617 S.W.2d at 532.

"Where there is fear of violence that overpowers a woman's mind to resist, there is no consent. And if resistance would be futile, proof of such is unnecessary." *State v. Greer,* 616 S.W.2d 82, 83 *(Mo.App. 1981) citing State v. Hamm,* 577 S.W.2d 936, 939 (Mo.App.1979). In *Greer,* the victim was abducted by four men and she feared one of them had a concealed knife. She did not resist four separate acts of sexual intercourse because of fear generated in part by what she described as the defendant's extremely forceful and aggressive behavior and the fact that he (Greer) became angered upon her failure to obey his orders.

1. Forcible rape is defined by § 566.030:
   (1) A person commits the crime of rape if he has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

   . (4) Rape ... is a Class B felony unless in the course thereof the actor inflicts serious physical injury on any person or displays a deadly weapon or dangerous instrument in a threatening manner...
   Forcible sodomy is defined by § 566.060:
   (1) A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion.

   (4) unless in the course thereof the actor inflicts serious physical injury on any person or displays a deadly weapon or dangerous instrument in a threatening manner ...
   Deviate sexual intercourse as used in § 566.060 is defined as:
   [A]ny sexual act involving genitals of one person and the mouth, tongue, hand or anus of another. MAI–CR2d 33.01.

Turning to the case before this court, the appellant would have this court, and more importantly the trial judge and jury, believe the victim consented to the acts occurring on March 27. The victim states otherwise. A charge of rape can be established by the uncorroborated testimony of the victim unless it is so inherently contradictory or unbelievable as to require corroboration. *State v. Gray,* 423 S.W.2d 776, 781 (Mo.1968). In *Gray,* as in the case at bar, the jury could have found that the victim succumbed to the intercourse as a result of fear engendered by the fact that appellant had a weapon, by his aggressive action and conduct, and by his refusal to honor her entreaties not to engage in sexual conduct. The jury could also have concluded that resistance would have been futile and that none was required. Therefore the evidence was sufficient to support the verdict. *See Greer,* 616 S.W.2d at 84.

In assessing the victim's testimony as true for purposes of this appeal, as we must, a court and jury could find that the events of March 27, 1984 were the types of acts which induce fear and destroy consent. There was actual force as well as threats of violence directed toward the victim. Her testimony was neither contradictory nor unbelievable. It is clear from these facts that there was sufficient evidence for the court to deny the appellant's motion for acquittal at the close of all of the evidence on the charges of forcible rape and forcible sodomy.

The authorities, cited herein, also support the trial court's adverse ruling to the appellant on the charge of kidnapping since the appellant's challenge affects the element of consent alone. There is no question that the appellant removed the victim from the premises of the Montessori school. The issue is whether or not she consented to that removal as well as the acts of confinement that followed. It can be inferred from the evidence that she did not consent, but remained out of fear for herself and her child. The facts support the trial court's ruling.

That leaves as the last issue for consideration whether or not reversible error was committed when the trial court submitted a mandatory definition instruction two hours after the jury began deliberation. We hold the error was not reversible error.

It was error for the trial court to submit the definition instruction after the jury had commenced its deliberation. The proper procedure would have been to give it with the other instructions of the court before argument commenced.

Submission of an instruction in violation of rules or applicable notes on use constitutes error, the prejudicial effect to be judicially determined. *State v. Smashey,* 672 S.W.2d 154, 157 (Mo.App.1984); *State v. Allbritton,* 660 S.W.2d 322, 328 (Mo.App.1983); *State v. Green,* 674 S.W.2d 615, 619–20 (Mo.App.1984); Rule 28.02(e). Courts may withdraw or correct an instruction, at any time during trial, if upon reflection the same is considered to have been erroneously given. *State v. Sawyer,* 367 S.W.2d 585 (Mo.1963).

In a case similar to the case at bar, the court substituted an instruction after extended deliberation by the jury and in response to a jury question. The instruction which was substituted was the defendant's converse of the verdict director. The defendant objected alleging it was improper to substitute an instruction after the case had been submitted. *State v. Montgomery,* 590 S.W.2d 105, 107 (Mo.App. 1979). The defendant's converse was improper because it was inconsistent with the verdict director. "The substituted instruction properly stated the law and the defendant makes no claim that it did not." *Id.* The defendant in *Montgomery* claimed he was prejudiced because the instruction was submitted after he had argued the case. The court found that the defendant failed to show how his argument was affected by the substituted instruction. The court also stated that they did not find it to be an improper comment on the evidence. *Id.* at 108.

"Although we cannot say that in every case the court can substitute an improper instruction with a proper one after the case is submitted to the jury, the defendant has failed to show and we find no prejudice to defendant by the court's action in this case." *Id.*

 We agree with the *Montgomery* case in that appellant has not shown that he was prejudiced by the late submission of the definition of "deviate sexual intercourse." Appellant's sole claim of prejudice is merely that "I think it highlights testimony." It would have been prejudicial error if that required instruction had not been submitted.

In *United States v. Humphrey*, 696 F.2d 72, 75 (8th Cir.1982), the court held that a trial court did not abuse its discretion by giving the definition of "possession" to the jury in response to a jury question. The court stated, "The instruction submitted to the jury in the present case simply defined possession. It was favorable neither to the government nor to appellants." *Id.* In the case at bar, the instruction given to the jury was also a definition that favored neither appellant nor the state.

In *State v. Hodge*, 660 S.W.2d 400 (Mo. App.1983), the initial omission of a paragraph from the instructions was corrected by the court's reading of the omitted paragraph before any possible harm was done. This correction was made during closing argument. In the case at bar, the court submitted the required instruction two hours after the jury began deliberations. As in *Hodge, Montgomery, and* Humphrey, *we find no reversible error in the late submission of an instruction.*

In this case, the omission of the mandatory definition instruction was corrected after the jury had commenced deliberation. The definition provided was in accordance with MAI–CR 2d 33.01. This instruction is plain and simple in terms and meaning. Although it may be a better practice to correct an error in instructions before jury deliberation, the appellant herein was not adversely impacted by the subsequent submission of this instruction.

The judgment of the trial court is affirmed.