■ The State argues that the trial court erred in failing to reduce the Crime Victim's award by the total amount of Worker's Compensation Act disability compensation Printy received, whether for temporary total or permanent partial disability.[4] The State is correct; since the plain meaning of § 595.035.2 is to reduce the Crime Victim's award by any amount received as a result of the injury under insurance programs and public funds, this court is not at liberty to vary the plain language of the statute. See Metro Auto-Auction v. Director of Revenue, 707 S.W.2d 397, 401 (Mo. banc 1986). Thus, the entire amount of disability compensation received from Worker's Compensation proceedings (whether for temporary or permanent disability) must be credited against the Crime Victim's award.

**STATE of Missouri,
Plaintiff-Respondent,**

v.

**R__ D__ G__, Defendant-Appellant.**

**No. 14740.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 16, 1987.

---

Janet M. Thompson, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

By nine-count information filed in the Circuit Court of McDonald County and thereafter amended, defendant R___ D___ G___ was charged with four counts of rape in violation of § 566.030, RSMo Supp.1984, four counts of incest in violation of § 568.-020, RSMo Supp.1984, and one count of sodomy in violation of § 566.060, RSMo Supp.1984. After a change of judge and a change of venue to Newton County, a jury trial was waived and the cause was tried to the court. Upon trial, the State dismissed the four counts charging incest. The court found defendant guilty of four counts of rape and sentenced him to serve five years for each offense, the sentences to run concurrently. The court also found defendant guilty of one count of sodomy. His punishment upon the charge of sodomy was assessed at imprisonment for a term of five years, the sentence to run consecutively to the concurrent sentences for rape. Defendant now appeals. We affirm.

Rule 27.01(b) provides that in a court-tried criminal case, the findings of the court shall have the force and effect of the verdict of a jury. Therefore, the scope of appellate review is the same as if a jury had returned a verdict of guilty. *State v. Giffin*, 640 S.W.2d 128, 130 (Mo.1982). Consequently, in determining the sufficiency of the evidence, this court must accept as true all evidence tending to prove the defendant's guilt, together with all favorable inferences reasonably to be drawn therefrom, and disregard all evidence and inferences to the contrary. *State v. Giffin*, 640 S.W.2d at 130. So taken and considered, the evidence was that the prosecutrix (to whom we shall refer as E——) lived with her mother and the defendant near Anderson, Missouri. E—— was 17 years of age at trial time. The defendant was 25 years of age and was employed as a heavy equipment operator.

During the first few days in April 1985, E——'s mother was hospitalized at Gravette, Arkansas. E—— testified that on the evening of April 2, 1985, the defendant seized her and forced her into his bedroom against her will. The defendant removed E——'s night clothes, "started fondling [her] breasts and kissing [her]" and finally inserted his penis into her vagina. E—— tried to pull away and told the defendant to leave her alone, but the defendant "had a grip" on E—— and refused to release her. When she was asked if she screamed, E—— testified she did not do so because "[i]t wouldn't have done any good."

The next day E—— and other members of her family visited E——'s mother at the hospital. The group returned home after 10 p.m. After E—— had put on her night clothes, she was again forced into the defendant's bedroom. The defendant again removed E——'s clothing, put her on his bed and started kissing her. E—— tried to pull away and told the defendant to stop, but he ignored her protests and again had sexual intercourse with her.

On May 8, 1985, after she had come home from school, E—— drove a pickup truck to a field to practice driving. Defendant went along as a passenger. The defendant told E—— to stop the truck. When she did so, the defendant forced her to lie down on the seat, unhooked her brassiere, fondled her breasts and had sexual intercourse with her. The defendant then pulled the prosecutrix out of the truck, laid her over the seat with her feet on the ground and inserted his penis into E——'s anus. E—— attempted to stop the defendant but was unable to do so.

On the morning of August 10, 1985, E——'s mother went to the bank. While E—— was cleaning up after breakfast, the defendant again seized her by the arm and forced her into his bedroom. He removed E——'s bathrobe, nightgown and underwear, laid her on a bed and had sexual intercourse with her. The prosecutrix again tried to stop the defendant, but was unsuccessful.

After the State had presented its case-in-chief, counts 5, 6, 7 and 8 of the information, charging four acts of incest, were dismissed. Defendant then presented evidence.

The defendant had the evidence of Sharon Wiley, who had been employed by the Division of Family Services in August 1985. Ms. Wiley interviewed E—— on August 14, 1985. E—— stated to Ms. Wiley that she, E——, had been raped by the defendant on April 2, 1985, and on the following evening. E—— also told Ms. Wiley about the rape and sodomy incident. Ms. Wiley testified from notes, and there was some inconsistency between E——'s trial testimony and the particulars of the events related to Ms. Wiley, as Ms. Wiley recalled the interview. For example, E—— had told Ms. Wiley that the sodomy occurred before the rape on May 8.

Both the defendant and his wife (E——'s mother) testified. The defendant adamantly denied he had ever sexually assaulted E——. E——'s mother testified that her daughter never made any complaint of sexual abuse by the defendant. E——'s mother also denied that she had ever communicated with Ms. Wiley or the McDonald County Sheriff's office concerning her daughter's complaints of sexual abuse.

The State called a McDonald County deputy sheriff and Ms. Wiley as witnesses in

rebuttal. Deputy Sheriff West testified that on August 14, 1985, E—'s mother had related E—'s complaints about the defendant's sexual abuse to him. Ms. Wiley testified in rebuttal that in August 1985, E—'s mother had told her that E— had complained because the defendant kissed her and fondled her, and had discussed another attempted sexual assault upon E— by the defendant. Such is the substance of the evidence received.

■ As a preliminary matter, we must address the State's assertion (in its jurisdictional statement) that in sentencing the defendant the trial court misinterpreted § 558.026.1, RSMo Supp.1984. The State contends that a proper construction of § 558.026.1 mandatorily required the trial court to impose consecutive sentences for the several rapes. The State's argument is without merit. The several rapes were not committed "during or at the same time" and the trial court was not *required* to impose consecutive sentences. *State v. W.— F.W.—,* 721 S.W.2d 145, 153–54[11] (Mo.App.1986).

■ Defendant's first assignment of error is that there was no substantial evidence to support a finding of the "forcible compulsion" required by § 566.030.1 [1] and § 566.060.1, RSMo Supp.1984.[2] "Forcible compulsion" was defined by § 556.061(12), RSMo Supp.1984, as "[p]hysical force that overcomes reasonable resistance." The defendant relies on the decision of this court in *State v. Phillips,* 585 S.W.2d 517 (Mo. App.1979), but that case is factually quite different from the case at hand and is not controlling here. It may be said that the law does not require or expect the utmost resistance to sexual assault when it appears that such resistance would be futile or would provoke more serious injury. *State v. Hannett,* 713 S.W.2d 267, 271[3] (Mo.App.1986); *State v. Dighera,* 617 S.W.2d 524, 532 (Mo.App.1981). We must bear in mind that the victim was a school-girl, 17 years of age; the defendant was a male 25 years old. The defendant's behavior was such, if E—'s testimony is accepted, that E— could reasonably have expected him to use such force as was necessary, even though the defendant did not strike his stepdaughter nor threaten her overtly.

■ E— testified to some resistance on each occasion she was assaulted. Referring to the rape of April 2, E— testified that she tried to pull away and told the defendant to leave her alone, but the defendant "had a grip on" her and would not release her. The following evening E— also attempted to pull away and told the defendant to stop. On both occasions, the defendant had grabbed E— by the arm and had forced her into his bedroom.

When the defendant raped and sodomized E— on May 8, 1985, she unsuccessfully tried to stop him. She testified that on that occasion, the defendant was "holding her arms tight" most of the time. On August 10, 1985, the defendant again seized E— by the arm and forced her into his bedroom. She again tried to stop the defendant but was unable to do so. Considered as a whole, E—'s testimony provides evidence that: 1) the defendant used physical force in carrying out his assaults on her; 2) that E— tried to resist, and 3) that she was unsuccessful. There was a sufficient showing of resistance, in the circumstances, to establish forcible compulsion by the defendant.

■ Defendant also assigns error to the admission of rebuttal testimony received for the purpose of impeaching J—, who is E—'s mother and the defendant's wife. J— testified as a witness for the defendant. On cross-examination, J— testified as follows:

"Q. It's also a fact that [E—] approached you and started telling you about him (defendant) kissing and hug-

---

**1.** "A person commits the crime of forcible rape if he has sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion."

**2.** "A person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married, without that person's consent by the use of forcible compulsion."

ging around on her, and started to tell you something else and you got interrupted, isn't that a fact?

A. No.

Q. *It's a fact that you told Sharon Wiley that, isn't it?*

A. *No, I didn't.*

Q. *Never made that statement to her?*

A. *No.*

\* \* \* \* \* \*

Q. *You don't recall in making that statement to her?*

A. *No, I don't."* (Our emphasis.)

The State called Sharon Wiley as a rebuttal witness, advising the court that it proposed to show a prior inconsistent statement made by J— to Sharon Wiley, solely for the purpose of impeachment. Ms. Wiley was asked if J— had related E—'s complaints "as to kissing and fondling" by the defendant. Ms. Wiley responded that "such a conversation" took place. The defendant now asserts that the trial court admitted hearsay.

■ It is elementary that prior inconsistent statements of a witness, whether made in or out of court, are admissible for impeachment as affecting the witness' credibility. *State v. Atkins,* 494 S.W.2d 317, 320 (Mo.1973); *State v. Banks,* 468 S.W.2d 623, 625 (Mo.1971); *Neavill v. Klemp,* 427 S.W.2d 446, 448 (Mo.1968). Of course, in order to impeach a witness with a prior inconsistent statement a proper foundation must be laid; the witness must be asked whether he made such a statement, and if he denies making the statement or states that he cannot recall, the prior inconsistent statement is admissible. *State v. Graves,* 588 S.W.2d 495, 498 (Mo.banc 1979); *State v. Vaughn,* 501 S.W.2d 839, 842 (Mo.banc 1973); *State v. Ivicsics,* 604 S.W.2d 773, 780 (Mo.App.1980). We need not, for our

purposes, consider the application of *Rowe v. Farmers Ins. Co., Inc.,* 699 S.W.2d 423 (Mo. banc 1985), and § 491.074, RSMo 1986, to this case.[3] Prior to the decision in *Rowe* and the enactment of § 491.074, RSMo 1986, our courts generally held that prior inconsistent statements were hearsay and were admissible only for the purpose of impeachment and were not to be taken as substantive and affirmative proof of the facts stated therein. *Rogers v. Fiandaca,* 491 S.W.2d 560, 565 (Mo.1973); *State v. Gordon,* 391 S.W.2d 346, 349 (Mo.1965); *Powell v. Norman Lines, Inc.,* 674 S.W.2d 191, 197 (Mo.App.1984). The trial court indicated that it received J—'s prior inconsistent statement *only* for the purpose of impeachment.[4] Defendant's point is ill taken.

■ In his final point the defendant contends that the trial court committed plain error in admitting testimony of Sharon Wiley concerning statements made by J— about "an alleged March 5, 1985 sexual assault with which appellant was not charged." Defendant maintains that this testimony not only constituted inadmissible hearsay, but was inadmissible evidence of the commission of other crimes by the defendant.

Upon cross-examination, J— testified as follows:

"Q. Now, without going into the substance, isn't it a fact that you told Sharon Wiley that [defendant] had in fact attempted to assault E— on March 5th, 1985?

A. No, I didn't say that.

Q. And that a fight had occurred?

A. No.

Q. And that E— had thrown a vase at him to try to break that night up?

A. She threw the vase at him.

Q. And he had tied you up in the bed?

---

3. Section 491.074, RSMo 1986, which was in effect when this case was tried, provides in material part that "... a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement."

4. When counsel objected that the prior inconsistent statement was hearsay, the trial court replied: "It's not an issue of whether or not it's truthful. The issue is it's not being offered for truth of the contents of the statement, but simply that the statement was made. The objection's overruled."

A. Yes, he did that.

\* \* \* \* \* \*

Q. That all originated, did it not, with him attempting to sexually assault E—?

[DEFENDANT'S COUNSEL]: Same objection, your Honor (that the evidence was irrelevant).

THE COURT: It's overruled.

[THE PROSECUTING ATTORNEY]:

Q. It all originated from his initial attempt in the bathroom to sexually assault E—, didn't it?

A. No.

Q. Did you tell Sharon (Wiley) that?

A. I didn't tell Sharon anything.

Q. *Isn't it a fact she went through that event specifically with you about him attacking E— in the bathroom, and you coming in and telling her to leave him alone, and him beating you up and tying you up, and her coming to your assistance, and a big fight occuring* [sic]?

A. *No.*

Q. She asked you about each one of those details, and isn't it a fact that you told her, yeah, that's what happened?

A. I said, no, it didn't happen.

Q. *And you told her, yeah, now that I put things together, with E— coming up and telling me these things, I should have known he was sexually assaulting her?*

A. *No.*

Q. *You never made those statements?*

A. *No.* (Our emphasis.)

On rebuttal, Ms. Wiley testified thus:

"Q. Did you also discuss with [J—] an incident that allegedly occurred March 5th, 1985?

A. Yes, I did.

Q. Did you go into specific details on that incident?

A. As much as I had, yes, I did.

Q. Did she inform you that that incident had in fact occurred?

A. She said it was true?"

The defendant concedes that no objection was made to Sharon Wiley's testimony concerning the events of March 5, 1985. Further, although a motion for new trial was filed, it contained no allegation of error directed to that testimony. This point is therefore subject to review only as plain error. Rule 29.11(e)(2)(B); *State v. Arnold*, 676 S.W.2d 61, 63 (Mo.App.1984). "Plain error" has been defined as that order of error which "impact[s] so substantially upon the rights of the defendant that manifest injustice or a miscarriage of justice will result if [the error is] left uncorrected." *State v. Driscoll*, 711 S.W.2d 512, 515[1] (Mo. banc 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986).

The argument that J—'s prior inconsistent statements were hearsay has already been discussed. The further argument that Ms. Wiley's rebuttal testimony constituted improper and prejudicial evidence of the commission of another sexual offense by the defendant—an offense with which he was not charged—is controlled by *State v. Deaver*, 662 S.W.2d 871 (Mo.App.1983). In *Deaver*, the claim of error was that the State had improperly admitted evidence of the commission of another sexual offense by the defendant at a different time with a different person. Quoting at length from *State v. Leigh*, 580 S.W.2d 536, 545 (Mo. App.1979), *rev'd on other grounds, Leigh v. State*, 639 S.W.2d 406 (Mo.App.1982), the court held:

"'In a jury-waived case a certain amount of latitude in the admission of evidence is allowed, and *even where an error is made in the admission of some evidence, except where the trial court relied on that evidence in arriving at its findings of fact and conclusions of law, such error is ordinarily held to be non-prejudicial.... It is assumed that the trial court will not be confused or misled by what is irrelevant....*'" (Emphasis is original.)

*State v. Deaver*, 662 S.W.2d at 872. The court further held that reversal is required only if there is an indication that the improper evidence was relied on by the trial judge or that it was necessary to make a

submissible case. *Deaver*, 662 S.W.2d at 873.

Assuming the State's cross-examination of J— incidentally proved the defendant guilty of another crime, there is no indication in the record that the trial court relied upon the challenged evidence, and the record aside from that evidence is sufficient to sustain the convictions. This point is without merit and the judgments are in all respects affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.